matter number 171187 Katherine Morgan versus Nancy A. Berryhill. May it please the Court, my name is David Goldman and I represent the appellant, Katherine Morgan, in this matter. At the outset, I'd like to reserve just a minute for rebuttal, if I may. Yes, you may. This case is about the application of the standard established by the United States Supreme Court in the Burlington Northern and Santa Fe Railway versus White case for asserting anti-retaliation claims under Title VII of the Civil Rights Act. In the Burlington Northern case, the Supreme Court was faced with circuit court precedence to the effect that in order for a plaintiff to successfully satisfy the… We know the case. Yes. Well, in this case, there are a number of actions that were taken by the defendant against Judge Morgan that satisfy the standard of dissuading a reasonable employee from asserting a claim of discrimination. First, the context against which all this occurred, it must be remembered, is that there was what we refer to in our brief as the West Virginia scandal in which a number of administrative law judges… Judge Morgan is an administrative law judge. A number of administrative law judges in the Huntington, West Virginia office… What does that have to do with whether error was committed on entering summary judgment here? Well, this goes to… We've read the briefs. We're familiar with the facts. Okay. Can you move along? Yes. Well, so one of the instances of discrimination, one of the instances of retaliation of a claim in this case is with respect to Stephanie Corp, who was… She managed the day-to-day operations of the Portland Maine office where Judge Morgan works. Stephanie Corp became aware of Judge Morgan's claim of discrimination to the EEO in June of 2014, and she immediately began a campaign of attempting to interest the Office of the Inspector General in initiating a number of fraud investigations into Judge Morgan. And in Corp's complaints to the OIG, she explicitly tied in the kind of fraud she was complaining to this West Virginia scandal. As I understand it, she's not the supervisor or the supervisor's supervisor. She's the head of office operations. That is correct, Your Honor. The judge doesn't report to her. She doesn't supervise. She doesn't have the power to do anything to the judge in terms of firing or something like that. She doesn't have the power to fire Judge Morgan. She does review Judge Morgan's time entries, and she keeps track of what's going on in the office on a day-to-day basis. And that is the context against which she's making these fraud claims. She's making claims that Judge Morgan is committing fraud by fraudulently submitting time reports. But people have been accusing this judge of doing that for years, and I count at least five different people who are doing this. The law predated any allegations of discrimination by your client, so how does the fact that yet another one does what most plaintiffs' counsel would refer to as whistleblowing on violations of office procedures by a co-employee? Well, and you're correct that there have been a number of these allegations in the past, and that actually informs why this was retaliatory, because those allegations that you're referring to had by and large been investigated, and there had been a formal investigation. If she continued the conduct, what's wrong with a co-worker saying she shows up late, she submits false time records? I don't understand how that is retaliatory. Well, Stephanie Korb wasn't just saying that, okay, so there had been an end to the investigation, everything Judge Morgan did was okay prior to that, and now here's some new things. She's saying she explicitly ties us all into Judge Morgan's claim of discrimination. She says in her emails to OIG, Judge Morgan has been making claims of discrimination, and that's making people afraid to do what they should do, in Stephanie Korb's opinion, which is take action in response to all these. What's wrong with that? Well, Judge Morgan had already been cleared of most of the claims. Well, she hadn't. She had not been disciplined. Right. Well, so Maureen Schofield investigated the claims, and the result of the investigation was, A, that nothing that Judge Morgan had done was intentional wrongdoing, and to the extent there was any mistakes in terms of satisfying the requirements, it had been unintentional, and I think she said it was nothing egregious. So with that as the background, what Stephanie Korb is now saying is, well, what Judge Morgan is doing is so serious, it's similar to what was going on with the West Virginia scandal in which there was intentional collusion to share money with claimants' attorneys. I'm still stuck on, how does having an office manager who you don't report to, who's not even a judge or a lawyer, as I understand it, does not have that role in the organization, blowing the whistle and making a complaint against someone, let's assume it was even spurious, and let's assume she was doing it because she didn't let people make discrimination claims. How is that a materially adverse employment action by the employer? Right, so Stephanie Korb might not have had the authority to, by herself, take action against Judge Morgan, but she is bringing in OIG, which has the power to investigate and bring criminal charges against Judge Morgan. But Judge Morgan can investigate when someone makes something. Right, and even if you know, even as someone who knows that they are completely innocent of any wrongdoing, that person would not be very happy about knowing that the OIG, which has the power to... So what is the materially adverse employment action by the employer? Right. Is it Stephanie Korb filing? Yeah. And how is that materially adverse? It seems to me that's by a co-worker, not by the employer. Well, Stephanie Korb was in, I mean, she didn't have a position to fire Judge Morgan, but she... She wasn't in a position to do any disciplining. Well, she was in... That's why she needed to go complain to OIG. Right. Well, she was in a position to complain to OIG, which could then... As was every single person employed by the agency. Right. Well, and it wasn't just Stephanie Korb who was aware of these things. Judge Fletcher, who ran the office, also was aware of the claim of discrimination. But he didn't make the claim with the OIG. Right. He did not make the claim with OIG. So you're mixing and matching. You're saying a co-worker made a claim with the OIG, and the supervisor was aware of claims of discrimination. So what? It's not an element of the claim of retaliation that it be the person with the power to hire or fire the employee that takes the retaliatory action. All that's necessary under the Supreme Court's precedent is that whatever retaliatory action that was taken would be sufficient to dissuade an employee from making a report of discrimination. So if you take a step back... I'm sorry. I believe you've just misstated the law. It is the action by the employer. Are you saying the Supreme Court ruled otherwise? Well, I'm saying that Stephanie Korb was... Yes or no? No. What I'm saying is that Stephanie Korb was in a position, I mean, just because she did not have... Okay. We've heard your argument that she complained to OIG, and OIG stands in the shoes of the employer. We got that. What else do you have to argue? Other than that, there was also the incident involving Judge Carol Sachs, who was a second-line supervisor for Judge Morgan. Judge Carol Sachs was instructed... This is all against, again, the context of the investigation into the alleged fraud with respect to timekeeping and things of that nature. Judge Carol Sachs was going to have a meeting with Judge Morgan. She was instructed ahead of time, do not discuss the fact that there's an investigation going on. She has a meeting with Judge Morgan. She does not say that there is an investigation going on. The next thing that happens is... How does the fact that she learns there is an investigation going on amount to a retaliatory action? Well, again, it's viewed from the perspective of what the employer did and how that would be perceived or, as an objective matter, how an employee would react to that. It's true there was an investigation going on. There had been an investigation going on, which had terminated before Judge Sachs notified Judge Morgan that there was an investigation going on, but moreover... Are you saying Judge Sachs deliberately lied to Judge Morgan? We have no evidence that Judge Sachs deliberately lied, but what we do have evidence that she did was she showed absolutely no interest in whether it was true, in fact, that there was an investigation going on. She never looked into whether... She had been told there was an investigation going on. She repeated what she had been told, although she had been told not to tell your client. And your client asked if there was an investigation. She responded to a question from your client. She responded to a question, and then the only thing that changed before she changed her answer was Judge Morgan making her claim of discrimination. That was Judge Sachs' response to Judge Morgan making a claim of discrimination, to change her answer. Let me give you a concrete example. Suppose the employer put up a sign in the lunchroom that says, warning to employees, if you make a discrimination claim, and you then ask whether there's any investigations about you, we will tell you whether there are or not. Does that dissuade employees from making discrimination claims? No, but that would be... But that's your theory here. Your theory precisely is that what is the materially adverse employment action is her answering the question. Well, I think it's the change in the answer. It's when she, on the one hand, first, before the claim of discrimination, says, no, there's no investigation. Then Judge Morgan makes a claim of discrimination. And then the next thing that happens is Judge Sachs comes in after lunch. She says, no, you are under investigation. She leaves. She never corrects the record. And when she finds out that it wasn't true, she doesn't correct the record then either. Okay. That's a helpful clarification. Your time is up. You've reserved one minute. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Sheila Sawyer, and I'm here on behalf of the defendant appellee, Nancy Berryhill. I think that the question that, the last question that Your Honor, Judge Kayotta posed to opposing counsel was absolutely spot on. What Judge Morgan wants this Court to hold is that, under the rubric of Burlington Northern, that it would dissuade a reasonable employee from making or sustaining a charge of discrimination by receiving information that the employee herself requested, that the employer believed to be true at the time it was communicated, and which, by the way, the employee believed she was entitled to under a collective bargaining agreement. We submit that would be untenable under the, you know, Burlington Northern and its progeny. And then, just stepping back, context matters. As the Supreme Court said in Burlington Northern, you have to look at the events in question in context. And this judge had a long track record of violating the agency's time and attendance policies, and everybody complained, colleagues, coworkers, supervisors, she was incorrigible, and she continued, even in the face of being told that her conduct was being scrutinized. And so, I think that when you look at all the evidence in the record and context, it's very clear that summary judgment was appropriate in this case. You know, we're Article III judges, and we read about all of this going on among Social Security judges. It's pretty appalling. And the Social Security Administration has promulgated regulations to control just about every aspect of behavior. Is this the real world? Is that what it's like out there for Social Security judges and claimants who have to appear in front of them? Which aspect of their world is troubling to you? They don't show up on time. They cancel hearings when counsel and clients are ready to go. They take long lunch hours. They complain about each other. I mean, it's just an awful picture. I would agree with Your Honor, and unfortunately historically there's been this tension between the agency and the ALJ Corps because there is precedent out there that says that they have judicial independence and discretion. So the agency has to walk a very fine line in enforcing the policies that it puts in place. And many judges comply and some don't, and it's a very challenging agency to work within, Your Honor. I think that's fair to say. Shocking. If Your Honors don't have any... Your brother has a minute. You can sit down. We'll give him his minute. If you're caught by surprise, you can stand up again and tell us something. Thank you very much, Your Honor. Thank you, Your Honor. I'd just like to conclude by putting this in the context that this was not a decision after a trial in the merits in which a jury's conclusions are being deferred. This was a decision on motion for summary judgment. While it might be that a jury would be entitled to believe the version of events, the reasons that Stephanie Fork gave for why she asserted these fraud complaints, which she said were made in good faith, but which that's not something that a jury would necessarily have to agree with. On summary judgment, the inferences are made in our favor as a non-moving party, and that's why it was error for the district court to find us dead. Thank you. No. Okay. Thank you. Thank you both.